Jackson v. Edwards.

---

### JACKSON and wife, *appellants*, and EDWARDS and others, *respondents*.

Where real estate is sold by a master under a decree of the court of chancery in a *partition suit*, and there be unreasonable delay in *perfecting the title*, an order compelling the purchaser to take the title and perfect the purchase will not be made.

The delay was nearly *ten months*; and *time*, here, was held to be of the essence of the contract.

Whether the *inchoate right of dower* of the wife of a tenant in common in lands ordered to be sold in a *partition suit*, though she be made a *party* to the suit, is affected under the provisions of our statute by a sale in pursuance of such order, so as to bar a recovery in an action of dower upon the death of the husband, *quere.*[*]

Where an estate was granted during the *joint lives* of a husband and wife, with *power* to the wife of *appointing the fee* either by *deed* or *will;* and if she died before her husband, without executing the power, the estate to go to her *issue;* and in default of issue, to her *right heirs*—she taking the absolute fee if she survived her husband: IT WAS HELD, that the wife

---

[*]When the question was before the VICE CHANCELLOR of the first circuit, he held that the *inchoate right of dower* would not be barred by a *sale* in partition, although the wife was made a party to the suit. The CHANCELLOR however, on appeal, held that such right would be barred, and that the interest of the wife may be protected by the court by an investment of a portion of the proceeds of the sale, equal to the value of her interest in the land. In the court for the correction of errors but two opinions were delivered, and upon this question, the members of the court who delivered the same differ: Judge BRONSON doubts whether the right of the wife would be barred, and questions the authority of the courts to direct investments for her indemnity; whilst on the other hand, *Senator* VERPLANCK fully concurs in the views of the chancellor.

had a general and beneficial power, within the provisions of the statute, of appointing the fee ; that a master's sale under a decree in a partition suit would not destroy the *contingent interests* of her children, and that the only mode of conveying the estate freed from the interests of the children was by *deed* duly *acknowledged*, or by last will and testament.

APPEAL from chancery. The appeal in this case grew out of a motion originally made before the vice chancellor of the first circuit, to compel a purchaser at a master's sale to *complete his purchase* of certain lots in the city of New-York, he refusing to do so upon the allegation of *defect of title*. The order for the sale of the property was made in a *partition suit* prosecuted in the court of chancery. The bill for partition was filed by *Henry Jackson and Maria his wife*, and the defendants in the suit were *Benjamin B. Edwards and Nancy his wife, David S. Jackson and Sarah his wife, John O. Fay and Catharine his wife, Moses W. S. Jackson*, and *John J. H. Jackson*. The sale took place 15th February, 1837, and *John M. Bloodgood*, amongst others, was a purchaser, two lots being struck off to him at the sum of $6000. The terms of sale were as follows : *ten* per cent. of the purchase money to be paid down ; *thirty* per cent. to be paid on the first day of *March* following the sale, or as soon thereafter as the decree should be enrolled ; and *sixty* per cent. to be secured by bond and mortgage, to be paid within three years, with interest. The master's report of the sale was confirmed on the 14th of March, 1837. On the 7th April, 1837, a deed, executed by the master in pursuance of the sale, was tendered to Bloodgood, and evidence of the enrolment of the decree exhibited to him ; and performance on his part of the terms of the sale demanded, which he refused, alleging that the deed of the master would not confer a perfect title. One difficulty in respect to the title grew out of the conveyance by which the estate of Mrs. Edwards was granted to her. It was a deed executed to her and her husband by Henry Jackson on the 6th July, 1835, which conveyed *one third* of a certain share of property to her husband *during his life*, with a right to raise $5000 out of the remaining *two thirds*; and all the *residue* of the share was conveyed to her during the *joint*

Jackson v. Edwards.

*lives* of herself and husband, with a *power* to her of appointing the fee, either by deed or will. If she died before her husband without executing the power, the estate was limited to her issue, and in default of issue, to her right heirs, and if she survived her husband, she took the absolute fee. Mrs. Edwards, however, in her answer to the bill, had *consented* to a partition or *sale*, if the same should become necessary, and *in her own hand-writing* had endorsed her approval upon the draft of the decree ordering a sale. On the 17th April, 1837, the vice chancellor made an order of reference to a master to hear and examine the purchaser's objections to the title. Previous, however, to the hearing before the master, the vice-chancellor on the petition of the complainants made another order on the 27th November, 1837, directing *Mrs. Edwards* to execute a deed to the purchaser, cutting off the contingent limitations : which deed was accordingly executed by her on the 22d December, 1837. On the 8th January, 1838, the master, in pursuance of the order of reference to him, *reported* a number of objections to the title as presented by the counsel for the purchaser, and amongst others, the following : I. That the estate and interest of *Mrs. Edwards* is derived and held under certain indentures, (setting them out,) and that under them she doth not hold an estate in fee simple in the premises, but her estate is subject to certain powers, remainders and conditions in favor of persons not parties to the suit in partition ; and II. That the *femes covert*, parties to the partition, are not precluded of their estates and claims in and to the premises. In respect to which objections, he expressed the opinion, that a *good title* to the premises would pass to the purchaser under the proceedings in the partition suit, *and* by virtue of the conveyance excuted by Mrs. Edwards on the 22d December, 1837. The master further reported, that on the hearing before him, the purchaser further objected : I. That in determining upon the validity of his objections formerly taken, the master ought not to take into consideration the deed of Mrs. Edwards, or permit the complainants after the time which had elapsed since the sale, to avail themselves of any

deed showing a purchase of an outstanding claim or right, and thereby make a title to the lots sold, which did not exist at the time of the master's sale ; and II. That if the complainants were permitted to make a title which did not exist at the time of the purchase, the master ought to take testimony (which was accordingly offered to be given,) showing a *depreciation* which had taken place in the value of the lots since the same were struck off to the purchaser: which objections the. master reported he overruled as not embraced within the order of reference, and therefore not within his power to hear. To this report both parties excepted : the complainant excepted, because the master had not reported that the title was sufficient *without* the deed or appointment of Mrs. Edwards; and the purchaser excepted, because the master had not reported that a good title *would not pass* under the proceedings in the suit, or otherwise, and because he overruled the *additional objections* made on the hearing, and refused to receive testimony in support of the second objection. The case was heard before the vice chancellor on the 28th February, 1838, on the master's report in respect to the title, and the exceptions to the report, on which occasion was offered and read subject to objection, an affidavit of the purchaser, that he purchased the lots struck off to him with a view to a resale ; that about 1st May, 1837, could he have given a good title, he could have obtained for the lots $6600 ; that from about 1st June, 1837, the lots have been gradually and extensively depreciating in value, and that since 1st October, 1837, they have not been worth more than $4500, and on the 24th May, 1838, the vice chancellor *denied the motion* to compel the purchaser to take the title and complete his purchase ; he *holding* that the exception which related to the *inchoate rights of dower* of the *femes covert* was well taken, although they were parties to the record, in conformity to a former decision made by him in 1 *Edward's Ch. R.* 565. From this decretal order, there was an appeal to the CHANCELLOR, who, on the 29th March, 1839, *affirmed* the order of the vice chancellor, but on a different ground from that taken by him. The chancellor

held, that a sale under a judgment or decree in a *partition suit* bars or extinguishes the contingent right or interest of the wife of a tenant in common, where she is made a party to the suit with her husband, and that, whether she be an infant or adult; but he *further held*, that such great delay had occurred *in perfecting the title*, that the purchaser ought not to be compelled to complete the purchase, and, for the latter reason, affirmed the order appealed from. See the opinion of the chancellor, 7 *Paige*, 386.    From the decree of affirmance, the complainants below appealed to this court. Besides the appeal in this cause, there were four other appeals resting upon precisely the same grounds. It is necessary, to the full understanding of the *points* made by counsel on the argument and the *opinions* delivered in this court, that it should be further stated, that the parties to the suit in partition derived their title, either by devise or descent, since 1830, and that the marriage between *David S. Jackson* and his wife *Sarah* took place *subsequent* to the commencement of the suit in partition.    The case was argued in this court, by

*W. Silliman*, for the appellants.

*C. O'Connor*, for the respondents.

*Points made and argued by the counsel for the appellants :*

I. The vice chancellor erred in deciding that the inchoate rights of dower of married women cannot be sold by proceedings under the statute for the partition of lands; because, 1. The decision is in direct hostility to the plain and explicit terms of the statute, 2 *R. S.* 251, § 62, *2d ed.* which provides that " such conveyances" as therein specified " shall be a bar both in law and equity against *all persons interested in such premises in any way* who shall have been named as parties in said proceedings," and § 89, p. 254, which provides that " the final decision," &c. " shall be binding and conclusive on all parties named in the said proceedings," &c. 2. The inconveniences which would result from such a doctrine forbid a judicial repeal of the

Jackson v. Edwards.

statute. Establish that doctrine, and in the present case no partition could be made until six years hence, when the wife of D. S. Jackson will arrive at the age of twenty-one, and be competent to release her inchoate right of dower ; and if at that time she should capriciously refuse, the tenants in common must delay the partition until the death of herself or her husband shall destroy this inchoate right of dower. 3. This doctrine of the vice chancellor is an entire novelty, with the exception of his own decision in the case of *Mathews* v. *Mathews*, 1 *Edw. Ch. R.* 565. None of the doctrines laid down in this case entitle it intrinsically to any respect ; (see 2 *R. S.* 454, as respects the right to partition within three years after the testator's death ;) and as respects the legality of selling the inchoate rights of dower under proceedings in partition, it is at variance with the decision of Chancellor Walworth, in this case and in the case of *Williamson* v. *Parish*, 3 *Paige*, 653.

II. The chancellor, on appeal, overruled this doctrine of the vice chancellor, but sustained his decision on the ground of the complainant's *delay* in perfecting the title. If such delays as the chancellor supposes did in fact exist, they furnish no ground for the discharge of the purchaser ; because, 1. There is no precedent for discharging purchasers on such a ground, nor has the chancellor cited or been able to find any such precedent. In the multiplicity of causes of this sort which have been brought before the courts, if the law were as the chancellor supposes, some single precedent bearing some analogy to this case would doubtless have been found. 2. The precedents and the whole current of authority are all the other way, shewing the law always to have been otherwise. And the courts have gone so far, as upon a bill filed by a vender to compel a specific performance by a purchaser of his agreement to purchase land, when it appeared at the hearing of the cause that there was a defect of title which might probably be removed by the vendor's filing a bill and prosecuting a suit in chancery against another party, the court has stayed a decision until the result of such proceedings could be known. *See Sugden on Vendors,*

268 *to* 278. In most cases not tainted with fraud, liberal time has been allowed to vendors to perfect their title, even after a master's report against it, if it appeared probable that in reasonable time the title could be perfected. Lapse of time is not, in general, a valid objection to decreeing specific performance. *Waters* v. *Travis, on appeal,* 9 *Johns. R.* 450, in which case the lapse of time was fourteen years, during which the purchaser had been urged for payment. *Pierce* v. *Nichols,* 1 *Paige,* 244. *Seymour* v. *Delancy,* 3 *Cowen,* 445. *Dunham* v. *Minard,* 4 *Paige,* 441. The court have often compelled a purchaser to take a part of the thing purchased, or something different from that purchased, with compensation for the residue when the seller could not give a good title to the whole. *King* v. *Bardeau,* 6 *Johns. Ch. R. 38, and the cases there cited. Sugd. on Vend.* 198 *to* 206. *Winne* v. *Reynolds,* 6 *Paige,* 407.

III. Bloodgood alone, of all the purchasers, complains that he purchased on speculation, and that the value of his purchase has depreciated by a change of times. If there is any thing in this objection, it does not apply to any other of the purchasers who have made no such allegation. This objection of Bloodgood has no validity, for this, among other reasons, that he waited until after the title was pefected for another change of times, whereby he might realize a profit; and after the title was perfected, finding the speculation would be unprofitable, he made his affidavit in order to get rid of it. This affidavit was sworn on the 12th of February, 1838, until which day he chose to wait for a profit on his speculation, although the master reported a perfect title on the 8th of January, 1838.

IV. The order referring the objections to title to the master bears date on the 17th day of April, 1837. If Mr. Bloodgood or the other purchasers had suffered any loss in respect to contemplated speculations or otherwise, before this time, they should have shown their loss on the application for this order, and should have resisted the order; and if improperly made against them, should have appealed. By acquiescing in the order, they waived all previous de-

lays, if any existed on the part of the complainants, of which they might have taken the advantage.

V. Delays which may happen pending a reference of title, have never been deemed sufficient to discharge the purchaser; they should never have such an effect, where, as in this case, all parties have consented to or acquiesced in them. By the 101st rule of the court of chancery, either party is allowed to expedite a reference before a master—the purchasers should have done so, and should have obtained his report and applied to be discharged from their purchases, if they desired expedition. But so long as they chose to let the matter rest there, the complainants were at liberty to busy themselves in removing any fancied objections to the title.

VI. The objections to title specified in the stipulations of all the purchasers, (except Bloodgood,) which stipulations were the foundation of the orders of reference, relate exclusively to the effect of the infancy of some of the parties, and those objections only were referred, although the purchasers did, without any right, present other objections to the master. Bloodgood's case differed from those of others, only in that his objection to title was presented verbally, and theirs by written stipulation.

VII. It was not necessary to make the children of Mrs. Edwards parties to the partition suit—and the title of the purchasers was perfect without her deed, because, 1. The contingent interest of the children of Mrs. Edwards is in "such child or children or other issue" of Mrs. E. as may be living at the time of her death. The children or issue who may take under this clause are perhaps not yet begotten, and therefore could not be made parties. 2. The statute gives Mrs. Edwards a fee (as respects purchasers) under such a conveyance to her as that in question. 3. The answer of Mrs. Edwards, consenting to a sale, &c. her consent signed with her own hand to the draft of the decree for partition, and the decree of the court and sale made thereupon, is a sufficient execution of her power of appointment, to take away any contingent interest of her children. *See Carter v. Carter, Mose. 365. Fortescue v. Gregor, 5 Ves.*

553. *Sugd. on Powers*, 360. 4. After a sale under such circumstances, it would be a matter of course for a court of equity to compel Mrs. Edwards to execute a deed of appointment if necessary, and therefore the title could not be objected to. *Sugd. on Vend.* 237.

VIII. The estate was not sold under any warranty of title, nor is any fraud pretended. The master had made such examination of title as the law prescribes, and if a defect of title exists, the purchasers were nevertheless bound to accept their purchases. *Sugd. on Vend.* 210 *to* 217.

IX. No time was fixed for the completion of the purchase, and if it had been fixed, it would not in equity be deemed of the essence of the contract.

X. The affidavit of Bloodgood was objected to, and ought not to have been received. No opportunity was given the complainants to answer it. If he wished to be discharged, he should have served his affidavit and notice of motion for that purpose.

XI. The original objections to title were abandoned, and the complainants removed those which were substituted in their place, whether well founded or not, as soon as possible after they were raised.

XII. The purchasers should have made these objections before the report of sale was confirmed.

*Points made and argued by the counsel for the respondents.*

I. The purchasers would not have taken, by virtue of the decree of sale and the master's deed, executed in pursuance thereof, a perfect and unincumbered title to the lands in question.

II. The inchoate right of dower of the complainant, Maria Jackson, and that of Mrs. David S. Jackson, one of the defendants, were not divested by the proceedings, and would have remained contingent incumbrances upon the premises in the hands of the purchasers. 1. A legal title to land will not pass by force of a decree in chancery, except in certain special proceedings where such effect is given to the decree by statute. 1 *Story's Eq.* 607, §652. *Whaley v. Dawson,* 2 *Sch. & Lef.* 371, 2. 2. If the court had power to sell

these inchoate rights of dower, by virtue of its general authority, or under the statute for the partition of lands, the omission to provide for the security of these married women in the decree, was not merely erroneous, but, inasmuch as the suit was conducted by their husbands, without any action of the court, or of any guardian or trustee for them, having distinct reference to their rights, such omission rendered the proceedings fraudulent and void, as to them ; and the purchasers, having on the face of the decree full notice of the fraud and collusion, would not be protected against their claims. *Kennedy* v. *Daly*, 1 *Sch. & Lef.* 375, 6. *Gifford* v. *Hort, id.* 396. *Gore* v. *Stackpoole*, 1 *Dow.* 30. *Galatian* v. *Cunningham*, 8 *Cowen*, 361. *Griffith* v. *Hood*, 2 *Ves. sen.* 452. *Pawlet* v. *Delaval, id.* 666, 671. *Breedon* v. *Vaughan, Dickins*, 566. *Hodgson* v. *Merest*, 9 *Price*, 566. 3. Mrs. David S. Jackson is not, under the special circumstances of this case a purchaser *pendente lite*, within the maxim *pendente lite nihil innovetur. Bowen* v. *Idley*, 6 *Paige*, 43. 4. The statute for the partition of lands, 2 *R. S.* 316, does not authorize a court of law, or the court of chancery, to divest the inchoate right of dower of a married woman in the lands of her husband, by the compulsory operation of its judgment or decree. *Butler & Baker's case*, 3 *Coke's R.* 30, 753. *Dwarris on Statutes*, 707, 1*st Res. Edrick's case.* 5 *Coke's R.* 119. *Pennington* v. *Coxe*, 2 *Cranch*, 52. *Fisher* v. *Blight, id.* 390. *Bacon's reading on Stat. Uses*, 37. *Magna Charta,* 9*th Hen.* 3, *ch.* 7. 1 *R. S.* 742, § 16. *McCartee* v. *O. A. Society*, 9 *Cowen*, 507. *Beekman* v. *Bond*, 19 *Wendell*, 446. *Archb. Canterbury's case*, 2 *Coke's R.* 46, § 1, *and cases cited. Park's Law of Dower*, 342, 192. *Jackson* v. *Vanderheyden*, 17 *Johns. R.* 168. *Sutliff* v. *Forgey*, 1 *Cowen*, 96.

III. The contingent interests of the children of Mrs. Edwards, one of the defendants, would not have been extinguished by a sale and master's deed under the decree.

IV. If the court should consider the 2d point not well taken, and adjudge the 3d to be well taken, then the respondents submit that the great lapse of time, the change of circumstances, and the refusal of the vendors to perfect the

title until the purchasers' market for re-sale was lost, furnished just grounds for, and imperatively required the decision, made by the chancellor, discharging the purchasers. *Lloyd* v. *Collet*, 4 *Bro. C. C.* 469. 4 *Ves.* 686, 689. *Benedict* v. *Lynch*, 1 *Johns. Ch. R.* 370, 375, 379.

After advisement the following opinions were delivered :

By BRONSON, J. By the deed of July 6, 1835, from David S. Jackson to Benjamin B. Edwards and his wife, Edwards took a life estate in one third of the share of his wife, with a lien or charge of $5000, on the remaining two thirds of the land, which sum he was authorised to raise by sale or mortgage of the property. All the residue of the estate passed to Mrs. Edwards for the joint lives of herself and husband, with a general and beneficial power of appointing the fee, either by deed or will, to be executed at any time during the coverture. *Article relating to Powers*, 1 *R. S.* 732, § 77, 79. If she died before her husband without executing the power, the estate was then limited to such of her children or other issue as might be living at the time of her death, or, if she left no issue, to her right heirs in fee. If she survived her husband she took the absolute fee.

Without an execution of the power of appointment by Mrs. Edwards, it was, I think, impossible to make a good title to the property during the life time of the husband. Her children, who had a contingent remainder in fee, and who would take the estate in the event of her death, living the husband, and without an execution of the power, were not parties to the proceeding. The power was to be executed either by *deed* or *will*, and neither the assent of Mrs. Edwards to a sale in her *answer*, nor her *approval* endorsed on the draft of the decree, can be regarded as a good execution of the power. Except by will, she could only execute it by an instrument duly acknowledged on a private examination, in the manner prescribed by law in relation to other conveyances by married women : and without such an acknowledgment, the statute expressly provides that the grant " shall not be a valid execution of the power." *Powers*, § 113, 114, 117.

Jackson v. Edwards.

As the sale, with the *assent* of Mrs. Edwards, was not a good execution of the power, the only remaining enquiry on this branch of the case, is, whether the sale was effectual to destroy the contingent interest of her children. There is some difficulty in saying that she had an absolute power of disposition within the meaning of the 81st section, for the reason that the power did not enable her, in her life time, to dispose of the entire fee. § 80, 85. Her husband had a life estate in one third of the property, and a charge upon the residue, which were wholly beyond her control. And besides, the power did not extend to her own interest in the residue of the property for the joint lives of herself and husband. But if she had an absolute power of disposition, this was not a sale of the land for the satisfaction of her debts ; and without such a sale, or an actual execution of the power, her particular estate could not be changed into a fee, so as to defeat the contingent future estates limited to her children. § 81. If the power was not extinguished by the partition sale, it might still be executed in such a manner as would defeat the title of the purchasers : and if the power was gone, the purchasers would take the estate subject to the contingent interest of the children, who, in the event of the death of their mother in the life time of her husband, would take an absolute fee in the land. So long, therefore, as the power remained unexecuted, the purchasers could not obtain, what they expected to acquire, an indefeasible title to the property.

I shall not stop to enquire whether a court of equity could compel an execution of the power for the benefit of the purchasers. They were not bound to accept a doubtful or merely equitable title. *Seymour* v. *De Lancey,* 1 *Hopk.* 436. *Morris* v. *Mowatt,* 2 *Paige,* 586. Although these chancery sales are not made with warranty, it is the established course and practice of the court, whenever any objection is taken, if not in all cases, to refer it to a master to ascertain and report whether a good title can be made to the purchaser. It is the understanding of bidders, unless they are put on their guard at the time of sale, that they are to receive such a title as the court will approve. The in-

terest of venders, as well as purchasers, requires that such should be the rule. Property would not be likely to bring its fair value if it were understood that the purchaser was bound to accept a bad or doubtful title, or one which could only be perfected by a suit in chancery.

Until the deeds of appointment were executed by Mrs. Edwards, the vendors could not make such a title as the purchasers were bound to accept. The only remaining question on this branch of the case is, whether the purchasers were discharged by the lapse of time between the sale and the perfecting of the title.

The vendees made their purchases and paid ten per centum towards the price, in the expectation of receiving their deeds on the first day of March, 1837, or as soon thereafter as the decree should be enrolled. If the complainants were not bound to move sooner, they were at least bound to act when they were informed, on or about the first of April, that the purchasers refused to proceed on the ground that the title was defective. But, after procuring an order of reference and hearing the objections to the title before the master, they did nothing until the 27th of November, when the order upon Mrs. Edwards was obtained, and her deeds of appointment were not executed until the 22d of December—nearly ten months after the sales were to have been perfected. This was, I think, such an unreasonable delay as should discharge the purchasers. They made no frivolous objections, and there was no obstacle in the way of a much more speedy decision upon the title. They were not bound to lose the interest on their money for ten or twelve months, and forego the opportunity of re-selling upon advantageous terms. It appears by the affidavid of Bloodgood, who purchased two lots for $6000, that he could have obtained an advance of $600, on or about the first of May, if the title had been perfected, and that since the first of October following the lots would not bring more than $4500. The history of the times would warrant the belief of a much greater depreciation in the value of the lots. But we need not refer to the history of the times, nor was any affidavit necessary, to show, that the delay in perfecting the title

Jackson v. Edwards.

must have been injurious to the purchasers.   Whether they bought on speculation or not, every man must desire to have his property in such a condition that he can call it his own, and be at liberty to use or dispose of it at pleasure.   So long as it remained uncertain whether the title would be perfected, the purchasers could neither take advantage of any advance in value, nor protect themselves against depreciation, by making re-sales.   Few men would be willing to bid at a master's sale, if they were bound to accept a conveyance after such a lapse of time, and when there had been no fault on their part.

It is worthy of remark, that the delay did not arise upon objections to the title which were ultimately overruled.   The title was in fact defective until the deeds of appointment were executed.   It was the business of the vendors, of whom Mrs. Edwards was one, and not of the vendees, to procure those deeds.   That might, and should, I think, have been done immediately after the sale, so that the master would have been prepared to convey at the specified time.   But at all events the neglect for ten months to procure the necessary execution of the power of appointment was wholly inexcusable.   If the vendors rested on the mistaken supposition that the title was perfect, they rested at their peril, and ought not to complain that the vendees afterwards refused to go on.

The appellants have referred us to cases where courts of equity have held *time* not to be of the essence of the contract, and have decreed a specific performance long after the stipulated day had gone by.   I do not think it necessary to review those cases: most of them stand upon grounds which do not affect the present question.   And besides, if the English courts of equity have sometimes gone far enough, as I think they have, to impair the obligation of contracts, they have of late years been retracing their steps.   Our court of chancery has never followed those dangerous precedents, and I trust it never will.   Trifles, whether they relate to the time or the manner of performance, may be disregarded in every forum ; but it is not the province of any court, whether of legal or equitable jurisdiction, to dis-

regard matters of substance, and either make, modify or disannul the contract of the parties. I am of opinion that the purchasers were discharged by the delay in procuring deeds of appointment from Mrs. Edwards, and consequently that the decree of the chancellor was right.

This supersedes the necessity of enquiring. whether the *inchoate right of dower* of the wives of Henry Jackson and David S. Jackson were barred by the sale in partition. That is a much more difficult question than I had supposed it to be. The counsel for the appellants laid much stress upon the various provisions of the statute for the partition of lands, which relate to parties having contingent interests in the property. 2 *R. S.* 317. In relation to parties, see sections 1, 5, 7, 11, 13, 15; as to the judgment, and who are bound by the partition made in pursuance of it, see sections 23, 24, 35, 36; and as to who shall be barred by the conveyances, when a sale is ordered, see section 61, as amended, 3 *R. S. App.* 156, § 45.

There are many cases where persons having contingent interests in the property may be concluded by proceedings in partition, without working any injustice. When *partition* is *actually made,* a contingent interest in an undivided share may attach to the part, assigned in severalty to the owner of the particular estate on which the contingent interest was limited. For example, if A. have an estate for life in a moiety of the lands, with a contingent remainder in his share to B. : and C. have an estate for life in another moiety, with a contingent remainder in his share to D. : in such case, the remainder-men may be made parties to the proceedings, and be concluded by the partition between the tenants for life. They lose nothing by it. Their contingent interests are neither destroyed nor impaired. The effect of the partition upon their estates is the same, substantially, as it is upon the estates of the tenants for life—their undivided interest in the whole property becomes a several interest in a particular parcel. So here, if partition had been made, the inchoate rights of dower of the two married women would have ceased to be an incumbrance on the whole property, and would attach to the portions allotted to their husbands respectively.

But when we come to a *sale*, which takes away the property, the difficulties in relation to contingent interests seem to be insuperable. The objection meets us at the outset, that while the legislature has carefully guarded the rights of incumbrance creditors, § 8, 9, 42, 49, as amended, by 3 *R. S. App.* 155, and the interests of tenants in dower and by the curtesy, § 50, 55, no provision whatever has been made for those who have only contingent interests in the property sold. This lays the foundation for a strong argument against the doctrine that such interests can be barred by a sale. If the legislature intended to cut off contingent estates by a sale, they would have provided for an indemnity to the owners, by requiring an investment of some portion of the proceeds of the sale, for the benefit of those who might become entitled to the property, on the happening of the events on which the vesting of their estates depended.

I cannot yield to the argument, that the legislature intended to destroy inchoate rights of dower without providing for compensation. If any such innovation upon the rights of married women had been designed, it would, I think, have been expressed in unequivocal terms ; and besides, if these rights are taken away, all other contingent estates must fall with them, for the statute has made no distinction. We cannot hold that inchoate rights of dower are destroyed by the sale, without virtually deciding that a contingent remainder, or executory devise in fee, would also be destroyed. That would, in effect, be giving the whole property to the tenant for life, or other owner of the first estate, for he would take the whole proceeds of the sale. If such an interpretation of the statute involves no question of power, it amounts at least to an impeachment of the justice of the legislature. It may well be provided by law that a particular description of estate shall not be created in future, but it is quite a different question whether a legal estate already existing can be taken from one and given to another.

The chancellor did not yield to the argument that inchoate rights of dower were too inconsiderable to be regarded. He was of opinion that these and other contingent interests should be protected, and that this could be

done by directing a portion of the proceeds of the sale to be invested for the benefit of those who might ultimately become entitled to receive the money. My difficulty upon that question is, that we should be treading upon ground which has not been marked out for us by the legislature. The fact that the statute directs investments to be made in particular cases, without any general provision which might include contingent interests, goes far to prove that it was not intended to bar such interests by a sale. And I may notice here, that there is a marked difference between the language of the 35th section, which declares the conclusiveness of a *partition* actually made, and the 61st section, as amended, 3 *R. S. App.* 156, which declares the effect of the conveyances in case of a *sale*. While the former provision specifies with great particularity the classes of persons who shall be concluded by the partition, the latter only speaks in general terms, and may, perhaps, leave the matter open to such construction as the ends of justice shall dictate.

Still it must be admitted that the legislature has used very comprehensive terms in relation to contingent, as well as vested estates, and it may not be open to the courts to say, that any possible interest is saved from the operation of the statute. If that construction should ultimately prevail, it will then be our duty, whenever a sale is made, to take such order in relation to the proceeds, as will most effectually protect the rights of those having contingent interests in the property.

I have already said that the view taken of the other branch of the case renders it unnecessary to pass upon this point on the present occasion ; and in suggesting some of the difficulties which have occurred to my mind, I have not intended to express a definitive opinion upon the question. I think the decree of the chancellor should be affirmed, on the ground that the title was defective until the deeds of appointment were executed by Mrs. Edwards, and that there was great and injurious delay in procuring those conveyances.

By Senator VERPLANCK. I am well satisfied that the objection to the title of the lands sold, arising from the con-

Jackson v. Edwards.

tingent interest of Mrs. Edwards' children, was good, and that buyers at the sale could not be compelled to complete their purchases until this defect was remedied. That was done by the execution of Mrs. Edwards' deed of appointment: but I think the chancellor was justified by the evidence in regarding the delay to thus perfect the title, and the depreciation in value of the property in the mean while, as sufficient grounds for refusing to compel the buyers to complete their purchases. Whether such a delay is or is not material—whether a prompt completion of the sale is essential to the buyers interests, and formed part of his expectation and inducement in bidding, must depend upon the particular circumstances of every case. Here, I think, the chancellor was warranted in concluding, that the delay in removing the incumbrance of the contingent interest of the children, prevented the purchasers from having the full and substantial benefit of their bargains, and that therefore they ought not now to be compelled to take even a full and unobjectionable title.

But, in addition to this, I should hold, that if the parties were not discharged from their contracts on the ground just stated, that they were so by reason of the *question,* whether the inchoate rights of the wife's dower were barred by a sale and conveyance under a decree in partition to a fair purchaser. The chancellor has said that if the purchasers had placed their objection to the title upon this ground alone originally, he would have compelled them to take the title. I think him wrong here, and that this difficulty, under all the circumstances, was a sufficient and valid ground for refusal to complete the bargain ; and this, wholly irrespectively of the manner in which that question ought to be, or may be, finally determined. It was not a question of mere legal doubt, or of prudent caution, whether or not the incumbrance of the future right of dower did not remain in spite of the decree. It had been expressly decided that it did remain, in a former adjudication on this point, in the very court where the decree for the sale was made. That decision had been re-affirmed, on argument, in this very cause. It stood wholly uncontradicted by any other

adjudication. Here, then, was the very strongest *prima facie* evidence and authority that could be imagined for thinking the title imperfective and defective. The purchasers ought not to be required to take the deeds until that objection was cured. But it was not until more than two years, 940 days after the sale, that the vice chancellor's decision was reviewed before the chancellor, who then came to a different conclusion on the effect of the decree and conveyance under it. As this is one of the points of the appellants in this case, though it may not now be necessary to the decision of the case, it cannot even yet be considered as settled until decided here.

Under such a state of facts, it seems to me that the purchasers ought not to be compelled to take a title, the validity of which, so far, depended upon the contingent and doubtful fact of a higher court reversing the (as yet) uncontradicted decision of the court under whose authority the whole transaction took place : which decision, therefore, was to be regarded for the time, at least, as the law of the case. It would be inequitable to compel purchasers to take a title which would certainly, for some time to come, possibly always, be considered too defective to enable them to make a perfect and satisfactory conveyance to other purchasers. If the decision of this point should eventually be in conformity with the chancellor's view of it, and in opposition to that of the repeated decision of the vice chancellor, still that should have no retro-active effect upon the well founded doubt and consequent long delay which embarrassed the title. I do not say that such an objection, founded on a decision finally reversed, would alone form a good and sufficient defence ; but I hold that this difficulty, as a necessary cause of delay, taken in conjunction with the other circumstances of the case, which shew that such a delay, from whatever cause was most injurious to the interests of he buyers, and that the bids would not have been made had such a result been anticipated, forms a reasonable and equitable defence for refusing to complete the contracts.

These reasons are sufficient for the decision of the cause. The other question involved in it, on which the two courts

below have differed, is so important in itself, and has been so fully and ably argued before us, as well as in the opinions of the chancellor, and the vice chancellor of the first district, that I cannot pass it over in silence—more especially, as the views taken of it by other members of this court may govern their votes in this cause, though my owe vote for affirmance rests upon the reasons already stated, quite independent of the soundness of either doctrine.

I agree, however, with the positions of the chancellor, that a sale in partition divests the *inchoate rights of dower* of the wife of a tenant in common, if she has been made a party to the suit ; and that purchasers under the judgment or decree will be protected against all future claims on her part. By the statute regulating partitions, the conveyance of the commissioners and the deed of the master are both declared to be a bar, both in law and equity, against all persons interested in the lands *in any way*, who shall be named in the proceedings; and provisions are expressly made for bringing to the knowledge of the court the rights and titles of all persons having any interest in the lands to be partitioned. The wife's right of dower in land, though its possession is contingent upon survivorship, is still an interest, and one which our laws have expressly recognized as such in regulating the manner of releasing it by deed. When the property is once converted into money, the doctrine of annuities and reversions and the tables of probabilities of lives and survivorships, afford an easy and fair mode of ascertaining the probable and equitable proportion of the wife's interest, and other future and contingent interests as well as the value of present estates in dower or by the curtesy. The statute itself has expressly recognized the "principles of law applicable to annuities," as affording the equitable rule of compensation in some of these cases, and it is within the power of the court; and therefore its obvious duty, to apply the same principles to ascertain the value of similar estates or interests, and to direct the same to be secured, unless such provision should be expressly or impliedly waived by the party immediately interested. I therefore hold with the chancellor, that "in all such cases it will be the

duty of the court to ascertain and settle the value of such future estates and interests, in analogy to the express provisions of the statutes relative to the shares of parties who have present estates for life in possession."

But the validity of the sale does not necessarily depend upon the just application and apportionment of the fund raised by it. The latter, though an important part of the duty of the court, may be carelessly or erroneously performed, or its performance may be waived by the negligence or the acquiescence of the parties ; but in neither case ought the sale and the conveyances under it to be disturbed. When such a sale has been decreed without fraud or collusion, that equitable doctrine, so lucidly stated by Lord REDESDALE, applies in full force : " The general impression of all the cases is, that a purchaser has a right to presume that the court has taken the steps necessary to investigate the rights of parties, and that it has on investigation properly decreed a sale. Then he is to see that this is a decree binding the parties claiming the estate, that is to say, that all proper parties to be bound are before the court ; and he has further to see that taking the conveyance, he takes a title which cannot be impeached *aliunde*. He has no right to call for protection from a title not at issue in the cause and no way affected by the decision ; but if he gets a proper conveyance of the estate, although *the decree may be erroneous, and therefore to be reversed*, the title of the purchaser ought not to be invalidated." 2 *Sch. & Lef.* 577. The vice chancellor's great difficulty in coming to this conclusion seems to be, that as the law now stands the wife cannot be compelled to accept a settlement from her husband in lieu of dower, and that our statutes are explicit that no act or deed, without the assent of the wife, legally evidenced, shall prejudice her right to dower. " How then," he asks, " can the courts say that the act of the husband in subjecting his wife to a partition suit, or that a judgement or decree rendered therein without her assent evinced, is to have the effect of barring her right or that she shall accept a pecuniary or any other provision in lieu of her dower ?" But the policy of the law is clearly only the protection of the wife's dower against the abuse of

the husband's power and his acts. Now a sale in partition cannot be the mere act of the husband. It must be shewn to be necessary for the general benefit of all interested in the lands. To such a necessity, when allowed by the court, the husband's right of property gives way, either with or without his consent; then the inchoate right of dower being but an incident, must follow. It does so, not only in this case, but in many analogous ones, where private property is taken for public use and pecuniary compensation allowed, as in lands taken for streets in cities, for roads or for canals. In this instance of a partition sale, the sale is not allowed to be made for the purpose of divesting the wife's dower, but it is made because the interest of numerous joint owners demands it. The wife's future claim of dower is then divested, not by act of her husband but by the necessary operation of law; and the only question that then remains is, how shall the value of that interest be best ascertained, and when so ascertained, secured. The chancellor has, in my judgment, shown conclusively how this can and ought to be done.

Much of the objection to this interpretation of the statute rests, in my opinion, upon an indistinct and inaccurate notion of its operating to destroy previously vested incipient rights of dower. But a construction of the statute according to the natural and obvious sense of the words it employs, should not be prevented by any vague idea of its working an unwarrantable invasion of rights of property, justly held precious in our law. The operation of the statute of partition upon such rights of dower, is precisely of the same nature with the operation of all other statutes that in any way affect real estate. The right of dower, like all other rights of property, whether actual, initiate or contingent, is subject to such alterations or modifications of its future character as the policy of the statute law may prescribe. Inchoate rights of dower, like other rights if vested *before* the enactment of a new statute, may be beyond its operation. I will not venture, thus extra-judicially, to say how far and when such an exemption from a new statute would apply as to prior rights; but certainly all other rights of dower, like all other estates acquired after the passing of a statute, must

be wholly governed and modified by it.   Every such right of dower, then, acquired by marriage since the revised statute of 1830, or any prior statute from which it was re-enacted, is subject to the regulations and requisitions of such statute, whatever may be the effect upon prior marriages. Amongst these regulations must be classed the effect of master's or commissioner's conveyance on a sale in partition, making it "a bar in law and equity against all persons interested in any way in such lands, who shall have been named as parties in the proceedings in partition," as the wife's inchoate dower is surely an interest in some way.

In the present case the marriage was after the statute and must be governed by it, whatever might have been the case as to a marriage prior to any similar provision : on which I offer no opinion.

On the question being put, *Shall this decree be reversed ?* all the members of the court present who had heard the argument answered in the negagtive.   Whereupon the decree of the chancellor was AFFIRMED.*

---

* See *Zimmermann* v. *Rapp,* 20 *Wendell,* 101 as to the omission to make the *wife* a *party* to a suit in partition, and the construction put by the chief justice upon the *act for the partition of lands,* passed 16th March, 1785.