## MEAD a. MITCHELL.

*Supreme Court, First District; Special Term, July*, 1857.

The history of the law of England and of the State of New York respecting the partition of lands,—reviewed.

One of two tenants in common of certain lands, devised her moiety thereof to a trustee, to receive the rents and profits thereof, and apply them to the use of a female *cestui que trust* named in the devise, during her life, and after her death, in default of her appointment under a power given her, to convey to her heirs. During the lifetime of the *cestui que trust* a partition suit was brought by the other tenant in common, making the trustee, the *cestui que trust*, and all her heirs expectant then living, parties defendant. The court decreed a sale, and directed that half the net proceeds be paid to the trustee to be invested subject to the trust above mentioned.

*Held*, on motion by the purchaser to be discharged from his purchase,—
1. That (under *Laws of* 1840, *ch.* 177) the decree was binding upon the interests of any persons *not yet in being*, who might afterwards become entitled to share in the devised property, as well as upon persons in being; and that the purchasers therefore took a good title.
2. That (under § 113 of the Code) the persons not in being, who, by possibility, might have an interest in the premises, should be considered as represented in the suit by the trustee, and so bound by the decree, as if made parties by name.

Motion on behalf of a purchaser at a sale of premises in partition, to be discharged from his purchase.

The suit in partition was brought by Benjamin Mead against William Mitchell and others. The complaint set forth that the plaintiff and one Ellen Tooker, prior to the year 1843, were owners as tenants in common of a certain lot with a store thereon, in South-street in the city of New York, each entitled to one equal undivided half part thereof.

That said Ellen Tooker, being so seized of said undivided half part of said lot and store on or about November 3, 1843, by her last will and testament, duly executed to pass real estate, devised all her real estate to William Mitchell, his heirs and assigns forever, in trust, to receive the rents and profits thereof, and apply the same to the use of Ellen C. T. Hudson during her natural life, as the same should accrue, not by way of anticipation, and free from any control of her husband, for her separate use; and after her death, in default of the appointment (which she was by said will authorized to make), to convey the same to such persons of the blood of the said Ellen C. T. Hudson, as would have inherited the same from her if she had died intestate, seized of said premises; and the said Ellen C. T. Hudson (if she should so elect) was authorized to appoint in writing, in the nature of a last will and testament, that the rents and profits of said real estate, or any part thereof, should be applied, after her decease, to the use of her husband, Joseph Hudson, during his life, and in like manner to appoint, after her death, or his and her death, that the said joint estate be conveyed to such persons of her blood who would have inherited the same from her if she had died intestate, seized of the same, but to each in such proportion and for such estates as to her might seem proper.

That Mrs. Hudson had had two children, William Henry Hudson, and a daughter, who has died leaving a child, Catharine H. Robinson, her sole heir at law.

The complaint in this case was filed by the plaintiff to obtain a partition or sale of this store and lot, and the parties defendant were William Mitchell, the trustee under the will of Mrs. Tooker, the owner in her lifetime of the other undivided half of said premises, Mrs. Hudson and her husband, and her only child and grandchild. These were all the persons living, known or unknown, who have any interest in the premises, present or contingent.

The decree in this cause, which was entered in November,

1855, directed that the premises should be sold (actual partition thereof being impracticable), and that, after payment of the costs and expenses of the suit and of the sale, the proceeds should be paid, one half to the plaintiff, and the other half to the trustee under the will of Mrs. Tooker, "to be held and disposed of by him, under and in pursuance of the trusts and devises contained in said will, and with and subject to the powers and appointments and limitations contained in said will."

The premises were sold by a referee to David Dows, for the sum of $38,500. The purchaser objected to take the title, and now moved to be discharged from his purchase, on the ground that it was uncertain who, upon the death of Ellen C. T. Hudson or of her said husband, might be entitled to the remainder in fee; and that such persons being uncertain and unknown, the court had no authority to order a sale of the premises; and that such sale and a conveyance executed in fulfilment thereof, would be no bar to the claims of the persons (except those named in this suit), who should or might be entitled, on the death of Ellen T. C. Hudson and Joseph Hudson, to the remainder in fee of the said undivided half of the premises.

*C. Van Santvoordt*, for the motion.

*John T. Hoffman* and *B. D. Silliman*, opposed.

DAVIES, J.—At common law, estates, in respect to their owners, when held by more than one person, were divided into estates in joint tenancy, tenancy in common, and coparcenary: the first two were created by the act of the parties, and the last by the act of the law.

And at common law, partition could be made in every case by the consent of all the owners, yet it could not be compelled by one co-tenant against the will of the others or of any of them, except in the case of coparceners, until the passage of the statutes of 31 Henry 8, ch. 1, and of 32 Henry 8, ch. 32, extended this right to joint tenants and tenants in common. In all cases partition was to be made by a suit of partition, and an actual partition only could be had in any case. The manner of making partition between parceners, either by consent or by writ *de partitione facienda*, is fully explained in Coke Litt., tit. Parceners, 166*a*, *passim*.

The act of March 16, 1785, passed by the Legislature of this State, authorized the partition of estates held by joint tenants, tenants in common, and coparceners. The preamble to this act recites the necessity for its passage, and the reasons which influenced the Legislature in authorizing the partition of lands. They should be borne in mind, in construing the power conferred on this court in reference to this subject. It declares, " Whereas, many tracts of land in this State are held by divers persons as joint tenants, tenants in common, and coparceners, and such tracts cannot by law be divided, by reason of the absence, infancy, or coverture of some of the proprietors, to the great detriment of the owners, and the prejudice of agriculture," therefore be it enacted, &c.

The statute then authorizes any one or more proprietors of any tract or tracts, parcel or parcels of land, which then were, or thereafter might be undivided, who might incline to have a partition thereof, to procure the appointment of commissioners to make actual partition of said lands, among the several persons entitled thereto, having first set aside such portion thereof as they might conceive to be sufficient to defray the expense of the partition.

The allottment made by the commissioners was to be filed in the clerk's office of that county where the greater part of the lands lay, and the same was to be good evidence of such partition. And such partition, it was declared, should " be valid and effectual in the law to divide and separate the said lands."

Section 4 of said act authorized the commissioners to proceed and sell at public vendue, to the highest bidder, that part of said tract set apart to defray the expense of the partition. " And their deed to the puchaser shall pass as good a title to such bidder, for the separate enjoyment of the same, as if all the patentees or proprietors of the said land had made and executed the same in due form of law."

By section 15 of said act, the Court of Common Pleas of any county, in which lands were situated, on the application of any one or more owners or proprietors for the partition thereof, where the value of the same did not exceed five thousand pounds, were authorized to appoint commissioners to make partition thereof, but if such division could not be made, with-

out great prejudice to the owners, and the commissioners should so report to the court, and if the value did not exceed three thousand pounds, the court might order the commissioners to make sale of the same at public vendue, and to make and execute good and sufficient conveyances thereof to the purchaser, "which shall operate as an effectual bar, both in law and equity, against such owners, proprietors, and all persons claiming under them."

This act, and others relating to the same subject, were revised in 1813. (1 *Rev. Laws*, 507.)

Section 5 of this act authorizes a sale in the same manner as the act of 1785, and section 16 authorizes the Court of Chancery, in cases of partition pending therein, to decree a sale in the same cases as the courts of law were authorized by that act, "and where the ends of justice shall require it."

Section 14 of this act provided that whenever partition shall be made, in any of the courts, or a sale shall take place, and any of the parties shall have a freehold estate in the premises as tenants, by curtesy, or in dower, or as other tenant for life, whether such life estate be created by act and operation of law, or by devise, grant, or otherwise,—and the person entitled to the reversion, remainder, or inheritance, after the termination of the particular estate is unknown or uncertain, at the time of the commencement of the suit, or before the sale, so that they could not be made parties thereto, either by reason that the heir at law of the party last seized of the inheritance shall be contingent or uncertain, or that the ownership of the inheritance shall be contingent or uncertain, or that the ownership of the inheritance shall depend upon an executory devise, or the remainder shall be a contingent remainder, then and in every such case the partition or sale shall be binding on such person or persons as would have become entitled to such reversion, remainder, or inheritance, upon the termination of the particular estate, as fully, absolutely, and effectually as if such person had been known and named in such proceedings. This section contains a provision that notice shall have been given and published to such unknown or uncertain tenant in reversion or remainder, as owner of the inheritance ; and a further provision, that the court shall take order for securing a proportion of moneys which the person who would have been entitled to the inherit-

Mead *a.* Mitchell.

ance, upon the termination of such particular estate, would justly be entitled to.

Section 16 of this act authorizes the Court of Chancery, in cases of partition, to decree a sale of the premises, in the same cases, in which a court of law had power to decree a sale, *or where the ends of justice should require it*, thus extending the power of that court to decree a sale in every case where it should deem the ends of justice would be promoted thereby.

Section 17 declared that all sales and partitions, had in the Court of Chancery, should be firm and effectual forever, and the final decree for partition or sale should be binding and conclusive on all parties named in the proceedings, or their representatives; and in like manner on all parties who, or whose interests, were unknown, as if the said proceedings had taken place in a court of law, provided that when the parties interested were unknown, or their estates or interests were unknown, proper allegations were made in the complaint, and notice was to be given to all such unknown persons or parties. If such unknown persons or parties did not appear by a day certain, then the bill was taken as confessed by them.

These proceedings manifestly contemplated making parties all persons in being who might, by any possibility, have an interest in the premises, to the end that if they did not appear and answer, such interest, whatever it might be, should be cut off, and the partition and sale be effectual forever. But in a case where all persons in being were parties to the suit, and the contingency of interest was dependent on after-born persons, in such case it would have been an idle ceremony to have given the notice required by the act, and therefore not contemplated by it. There could be no appearance by persons not in being, but it is seen that the statute as effectually cuts off their rights and interests, as those of unknown persons in being to whom the notice was given.

We have seen that by the provisions of the act of 1785 a portion of the premises might be sold, and a good title given thereto. That by the act of 1813 it was contemplated that in all cases where an actual partition could not be made, a sale of the premises should be had, and a division of the proceeds had among the parties interested, whose rights were known and ascertained. And as to such rights as were unknown or uncer-

tain, or contingent, the proceeds of sale affected thereby were to be retained by the court, and such order made as would secure the same to the person entitled thereto, upon the determination of the contingency or uncertainty.

It cannot but be apparent that the Legislature intended to permit partition in all cases where practicable, and where not, that a sale of the premises should be had. In either event, the purchaser was to take a good title to the premises, divested of all claims of any person therein, or who might become interested therein. Such parties, if known, being made parties to the suit, and if unknown, or any interest therein uncertain, then as to such, the court were to take such order as required.

An examination of the provisions of the Revised Statutes will show that these previous acts have not been essentially modified, but their details rendered more specific and accurate. That part of the Revised Statutes which treats of the partition of lands owned by several persons, is found in Part III., chap. 5, title 3.

Section 35 of that title declares the effect of a confirmation of the report of commissioners in partition by a judgment of the court, that such partition shall be firm and effectual forever, and binding and conclusive, on all parties named therein, and their legal representatives, who, at the time, shall have any interest in said premises, or who, by any contingency, may be or may become entitled to any interest therein, or who shall have any interest in any undivided share of the premises, as tenant for years, for life, or by the curtesy,—on all persons interested in the premises, who may be unknown, to whom notice by publication had been given as therein directed, and on all persons claiming from such persons or parties, or either of them.

In case of a sale of the premises which the court were authorized to make, the commissioners in partition by section 60 of said title, are to execute conveyances to the purchaser, and section 61 declares that such conveyances, when executed and recorded, shall be a bar, both in law and equity, against all persons interested in the premises named in the proceedings, and against all persons unknown, if notice of the application by publication should have been given as therein directed.

Section 84 of said title declares that the final decree for partition or sale of any premises, made by the Court of Chancery,

shall have the like force and effect as if such proceedings had been had in the Supreme Court, under the foregoing provisions. It is true that the language of the act of 1813 has undergone some change in the revision of 1830, but there is nothing contained in the notes of the revisers, or in the last revision, which indicates any intention on the part of the Legislature to make any substantial change in the act. A mere change of phraseology in a revision of the statutes will not alter the law, unless it evidently appears that such was the intention of the Legislature. (Yate's Case, 4 *Johns.*, 359; Matter of John Brown, 21 *Wend.*, 316; Theriat v. Hart, 2 *Hill*, 380.)

In reference to these provisions of the Revised Statutes, Chancellor Walworth said, in Moring v. Phillips (1 *Paige*, 472), in 1829, that " ample provision is made for a case like the present in the Revised Statutes. After they go into operation, the court may decree a sale which will give to the purchaser a perfect title to the premises, discharged of all liens and encumbrances." The chancellor thereupon ordered the case to stand over till after the first day of January then next, when the Revised Statutes were to go into operation, to the end that a decree of sale of the premises might then be made as might be just, and as the court might then have the power to make.

I think this review of the legislation of this State shows that, in the case of an actual partition, or of sale for that purpose, it was the intention of the Legislature to give to the purchaser a perfect title to the premises, and which was to be a bar of all legal and equitable rights of all the parties to such proceedings. If the persons interested were known, they were to be made parties to the suit or proceeding; if not known, and in being, they were made parties in effect by the publication of the notice required by statute. If any persons not in being at the time, might by any possibility have an interest in the premises, such interest could be protected by the court making the necessary order for setting aside and investing such proportion of the proceeds of sale, as would be an ample protection for such future contingent interest.

This, it is conceded, could be done in the case of an actual partition. Indeed, since the case of Wills v. Slade (6 *Ves.* 498), decided in 1801, it has not been an open question. In that case, the Lord Chancellor held that it was no objection to a

partition that other persons, not parties to the suit (and who could not in any sense be made parties, because not in being), may come *in esse* and be entitled.

The same rule was laid down by Vice-chancellor M'Coun, in Cheesman *v.* Thorne (1 *Edw.*, 629). He says, " in looking at the statute, I see that those entitled to the reversion, remainder, or inheritance, after the termination of any particular estate, are bound by a judgment in partition, and a decree of this court is equally binding and conclusive."

In that case a sale had been decreed and made, and the purchaser refused to take on the ground that the interests of persons not *in esse* were not barred by the sale. This case was decided in 1833, and was generally regarded as settling the law on the subject.

In Jackson *v.* Edwards, Vice-chancellor M'Coun held that the inchoate right of dower of a married woman, in real estate, sold for partition by order of the Court of Chancery, was not extinguished, as no provision was made by law for securing the fund or proceeds belonging to the husband, or some portion of it, for the benefit of the wife, in the event of her survivorship. His opinion in this case was reversed by Chancellor Walworth, on appeal (7 *Paige*, 386). The chancellor says (p. 406), that on a careful examination of the provisions of the Revised Statutes, he had arrived at the conclusion that a sale by commissioners in partition, under a judgment in a court of law, or by a master under a decree in chancery, will of itself be sufficient, without any act of the wife, to extinguish the contingent right of the wife, in any part of the estate, when she is a party, and whether an infant or adult. He further says, that the six last sections of the revised act of 1813, to which reference has already been made, were intended to remedy the various defects then existing in the law, and to reach the various estates and interests of all persons in the several undivided shares of the premises held in common, in which some of the parties had a present estate or otherwise, "so as to make the partition or sale under the judgment or decree valid and binding, as to every estate or interest in an undivided share of the premises, whether present or future, vested or contingent."

He says the act of 1813 was found defective in two particulars, which were remedied by the revisers, retaining substantially

all the provisions of the act of 1813, in relation to the barring other future and contingent interests, by a sale of the premises under the judgment or decree. He says " that it was the intention of the revisers to enable the courts to give to a purchaser, under the judgment or decree, when a sale of the premises was found to be necessary, a perfect title as against every future or contingent interest in any undivided share of the property."

The judgment of the chancellor in this case was affirmed by the Court of Errors (22 *Wend.*, 498). Two opinions were delivered in that court—one by Bronson, justice, the other by Verplanck, senator. Judge Bronson, in reviewing the opinion of the chancellor on the point now under consideration, says that in cases of actual partition, a contingent interest may attach to the part assigned in severalty to the owner of the particular estate, on which the contingent interest was limited, without working any injustice. But when we come to a sale, which takes away the property, the difficulties in relation to contingent interests seem to him insuperable. He states that while the Legislature has been careful to protect actual and vested interests, no provision whatever has been made for those who have only contingent interests in the property sold. That if the Legislature had intended to cut off contingent estates by a sale, they would have provided for an indemnity to the owners, by requiring an investment of some portion of the proceeds of the sale, for the benefit of those who might become entitled to the property, on the happening of the events on which the vesting of their estates depended. The learned judge concludes by saying that " it must be admitted that the Legislature has used very comprehensive terms in relation to contingent as well as vested estates, and it may not be open to the courts to say, that any possible interest is saved from the operation of the statute. If that construction should ultimately prevail, it will then be our duty, whenever a rule is made, to take such order in relation to the proceeds, as will most effectually protect the rights of those having contingent interest in the property."

Judge Bronson seemed to think that there was a difference between the language used in section 35, as to the effect of conveyances in an actual partition, and that used in section 61, on a sale. With great deference, I must say that I am unable to see that the latter is not as strong as the former, and that it

was the intention of the Legislature to give to the purchaser on a sale as good and perfect a title as was given by the conveyance of the commissioners on an actual partition. We have seen that Chancellor Walworth so thought, and I think that a careful examination of the provisions of the revised act of 1813, and of the provisions of the Revised Statutes, will lead to the inevitable conclusion that the conveyance, in either event, vested in the grantee a perfect title to the premises.

Senator Verplanck says, in the case cited *supra*, that by the statute regulating partitions, the conveyance of the commissioners and the deed of the master are both declared to be a bar, both in law and equity, against all persons interested in the lands in any way, who shall be named in the proceedings, and provision is expressly made for bringing to the knowledge of the court the rights and titles of all persons having any interest in the lands to be partitioned. That, when the property is once converted into money, the doctrine of annuities and reversions, and the tables of probabilities of lives and survivorships, afford an easy and fair mode of ascertaining the probable and equitable extent of the wife's interest, and other future and contingent interests, as well as the value of present estates in dower or by the curtesy. He therefore holds, with the chancellor, " that in all such cases it will be the duty of the court to ascertain and settle the value of such future estates and interests in analogy to the express provisions of the statutes, relative to the shares of parties who have present estates for life in possession."

This decision was made in December, 1839, and in consequence of the doubts suggested by Vice-chancellor M'Coun and Judge Bronson, as to the power of the court to protect future and contingent interests, the Legislature, at its next session, passed the act of April 28, 1840 (*Laws of* 1840, *ch.* 177).

By the first section of this act, it is provided that in all cases of *sales*, under judgment or decree in partition, where it shall appear that any married woman has an inchoate right of dower in any lands sold, or that *any person* has any vested or contingent future right or estate in such lands, it shall be made the duty of the court, under whose judgment or decree such sale is made, to ascertain and settle the proportional value of such inchoate, contingent, or vested right or estate, according to the principles

applicable to annuities or survivorships, and to direct such proportion of the proceeds of sale to be invested, secured, or paid over in such manner as shall be judged best to secure and protect the rights and interests of the parties.

Section 2 authorizes any married woman to release to her husband her estate and interests.

Section 3 declares that such release, and also the payment, investment, or otherwise securing any share of the proceeds of a sale according to the first section of the act, shall be a bar, both in law and equity, against *any such right, estate, or claim.*

It will be observed first, that the language of this third section is much broader and more significant than that of sections 35, 61, and 84 of the Revised Statutes. They declare the conveyance executed to be a bar, both at law and in equity, against all *persons* named in the proceedings, and all *persons* and *parties* who were unknown, to whom notice had been given by publication. The third section of this act declares that the payment, investment, or otherwise securing such proportion of the proceeds of sale as the court may deem adequate to protect such vested or contingent future right or estate, shall be a bar, both in law and equity, against any such *right, estate, or claim.* While, perhaps, therefore, an argument might be raised upon the provisions of the Revised Statutes, that the sale was only a bar to *persons* in being, either named or unknown, and did not include those not in being, yet I think that the provisions of section 3 of the act of 1840, declaring the sale and security of a portion of the proceeds a bar to any future contingent interest, estate, or claim, as full, complete, and perfect as language can make it; and includes as well those in being, in whom the estate might subsequently vest, as those not in being. It is any such future contingent right, estate, or claim in the premises sold which is cut off and forever barred.

It will be observed, secondly, that the language of this statute is identical with that used by Senator Verplanck and the chancellor in Jackson *v.* Edwards, and seems especially framed to meet the objections made, and to remove the difficulties started by Vice-chancellor M'Coun and Judge Bronson. These being removed by this act of legislation, we have a uniform current of decisions in this State, that an actual partition cuts off all

future contingent estates, and that a sale, by the judgment or decree of the court, has the same effect.

It will be seen, by reference to the judgment or decree in this cause, that the plaintiff, who is undeniably entitled to an equal undivided moiety of the premises, of which partition is sought, is to receive an equal half-part of the proceeds of the sale, and that the other equal half-part thereof, and to which, if an actual partition could be made, the future contingent rights and estates therein would attach, are to be paid over to the trustee named in the will of the former tenant in common thereof, " to be by him held and disposed of under and in pursuance of the trusts and devises contained in said will, and with and subject to the powers, and appointments, and limitations contained in ·said will." The court has, therefore, in compliance with the act of 1840, directed such proportion of the proceeds of the sale to be secured and paid over, as it judged best to secure and protect the rights of the parties interested in, or who should be entitled to such future or contingent rights or estates, and such payment or securing is· by the same act declared to be a bar, both in law and equity, against any such right, estate, or claim.

· It follows, therefore, that the purchaser takes a perfect title to the premises, free and discharged of and from all such future or contingent rights, estates, or claims.

But it is said, on the part of the purchaser, that this disposition of the property may work an injury to those who may hereafter be entitled to the remainder in the undivided halfpart thereof, on the determination of the particular estate, that the proceeds of sale set apart for their security may be wasted or lost; and that eventually, when their estate vests, it will be gone; and that it is their right to have the property remain intact till such contingent rights become vested.

The answer to this last objection, it seems to me, is found, first, in the fact that the Legislature—for the purpose of preventing a suspension of the alienation of real estate, and to enable tenants in common to realize and enjoy what is without contest their own—have permitted, for such purposes, a disposition of the property. The present owner, who has rights and interests which he ought to be permitted to enjoy, is under no obligation to await the contingencies which his co-tenants may have seen fit to have created. The co-tenant should not, if it

can be avoided, be thus permitted to embarrass and deprive the other co-tenant of the enjoyment of his estate. I think no such injustice is sanctioned by the law, or should receive any countenance in this court; but while the rights of those whose interests are uncertain and contingent, are and should be fully protected, those in reference to whose rights no dispute exists should be permitted their free and full enjoyment. This result is warranted by law, and is, I think, attained in this case.

The other objection urged, that the sale should not be permitted, because a possibility exists that the fund paid over or secured as a protection of the rights of the parties who may have a future or contingent interest therein, may, before the same becomes vested, be wasted or lost, is equally, in my opinion, untenable. A similar objection was met and satisfactorily answered by Senator Verplanck, in the case of Jackson *v.* Edwards. He says: " But the validity of the sale does not necessarily depend upon the just application and apportionment of the fund raised by it. The latter, though an important part of the duty of the court, may be carelessly or erroneously performed, or its performance may be waived by the negligence or the acquiescence of the parties, but in neither case ought the sale, and the conveyances under it, to be disturbed."

I am therefore of the opinion that the purchaser at this sale will take a title free and clear of all future or contingent right, estate, or claim, to said premises, and that he should complete his purchase.

If I had had any serious doubts as to the soundness of the conclusions thus far formed, upon another ground I think these future contingent estates, and those who may become entitled to them, were fully before the court. By the will of Mrs. Tooker, her undivided moiety, or half-part of this property, is given to William Mitchell, his heirs and assigns, in trust, to receive the rents and profits thereof, and apply them to the use of Mrs. Henderson during her life; and on her death, if she shall so appoint to apply the same, to the use of her husband during his life; and on his death, or after her death, in default of such appointment by her, to convey the same to such persons of her blood as would have inherited it if she had died intestate. By the will of Mrs. Tooker she has power to appoint, by will, that

the "trust estate should be conveyed to such persons of her blood as she may elect," &c.

In Brewster v. Striker (2 Comst., 19), a similar devise was held to vest the legal estate in the trustees, and that the same created an active and not a passive trust.

Section 113 of the Code provides that a trustee of an express trust may sue, without joining with him the person for whose benefit the action is brought. If he can sue, it follows that he may be sued, and that the cestui que trusts are before the court by representation.

A familiar instance of the application of this principle, is that of executors and administrators, in respect of the personal estate of their testator or intestate. Whenever a suit is instituted which affects that personal estate, all the legatees have precisely that kind of interest which has been specified in the general rule; but they are unnecessary parties, inasmuch as by law their interests are protected, they themselves may be said to be represented in the person of the executor or administrator (Calvert on Parties, 20).

In this case all the parties having any interests in the estate in esse, were before the court. The trustee ex necessitate represented those not in being, and therefore they are bound by the decree as if they were parties. Lord Redesdale says in Giffard v. Hart (1 Sch. & L., 409), "Contingent limitations and executory devises to persons not in being, may in like manner be bound by a decree against a person claiming a vested estate of inheritance; but a person in being claiming under a limitation by way of executory devise, not subject to any preceding estate of inheritance, by which it may be defeated, must be made a party to a bill affecting his rights."

It appears to me therefore quite clear, according to many and well-settled principles of equity, that the persons not in being, who by possibility may have an interest in these premises, were represented by the trustee in whom the estate is now vested, and will be bound by the decree made in this cause,—that the section of the Code quoted before is in affirmance of this principle, and clearly establishes the position assumed by the parties to this suit, that the trustee represents all the interests of the persons not in being in these premises.

An order must therefore be entered in this cause directing the purchaser to complete his purchase.