1840.

COSTER
*v.*
CLARKE.

organizing a bank on his own account and wanted the Maine stock to deposit with the comptroller as security for circulating notes and as part of the capital of his contemplated bank, which was subsequently established by him and, as the defendant had been informed by the complainant, the said stock or a portion thereof was deposited with the said comptroller and circulating notes issued thereon—also that he had been informed by the latter that the said stock or the principal portion thereof was afterwards sold by him and that he received, in payment thereof at its par value, promissory notes, which he, the complainant, considered good.

Mr. *Lord,* in support of the motion to dissolve the injunction.

Mr. *Anthon,* for the complainant.

*Jan.* 18, 1841.

---

### COSTER *v.* CLARKE and others.

---

A purchaser at a master's sale, who is not notified of risk in the title, will not be compelled to take, unless he can get a legal and equitable estate.

Five persons purchase real estate for joint benefit and sign an agreement that it shall be (which it is) taken in the name of one who is to hold and receive avails for joint account, until a sale and conversion into money. A bill is filed for partition, sale and account ; and the executors of one of the five, who had died, were made parties. An objection that his heirs should have been made parties was overruled ; the court deciding that his share lost its quality of land and went to his representatives. Also decided, that his widow was not a necessary party, she having no right of dower. The court also held, that the wife of the party in whose name the property had been taken in trust had no inchoate right of dower.

APPLICATION to compel a purchaser to take land bought at a master's sale.

With regard to the title, it appeared that in the year one thousand eight hundred and twenty-five the complainant, John G. Coster, with James B. Clarke, Samuel James and Joseph Moser, agreed to purchase the lease of one of the Brooklyn ferries and also certain tracts of land in Brooklyn on joint account and for their mutual benefit. All these were conveyed to the said James B. Clarke, so that the legal estate appeared to be in him. On the seventeenth day of August, one thousand eight hundred and twenty-six, the parties had entered into an agreement; and the following were its leading provisions : " *First.* To be jointly and equally interested in the said ferry and property; and that the same shall be sold and disposed of for their joint and equal benefit from time to time as shall be thought best for the space of five years from the first day of May last; after which, all the said real property shall be sold and the profits divided equally between the parties; and that previous to the expiration of the said five years, the money arising from the sales shall be first appropriated to pay the money so advanced by the said parties; and no money shall be divided until all the debts so owing are paid and settled. *Second.* Accounts shall be kept by a person appointed for that purpose of all the costs, expenses, purchases and receipts; and shall be open for the inspection of all the parties; and an interest of six per cent. shall be paid for all moneys advanced for the concern by any of the parties. *Third.* No person shall sell his share of this concern unless to the parties hereto. *Fourth.* The stock in the ferry shall be a separate concern from the land and lots and may be held and managed with other persons as an association under the lease and be governed by the regulations of such association. *Fifth.* It is hereby covenanted and agreed by and between the said parties that in case either of the parties should die before the said five years or before the business is settled, that the share of such person shall remain vested in the survivors and undivided until the end of the said five years; but the heirs, executors or administrators of such person shall receive their proportion of any moneys divided to the other parties and their final share on such division. *Sixth.* The real property

*1840.*

COSTER
*v.*
CLARKE.

*Dec.* 8,

*Conver-
sion.
Heir.
Executor.
Next of
kin.
Dower.
Parties.*

and leases held by the said James B. Clarke, in trust, shall, in case of his death, be conveyed, by virtue of a power in his will, by his executors, to such person or persons as the parties hereto shall nominate, in trust for the parties hereto and their heirs. *Seventh.* All real property and all leases, bonds, mortgages and notes received on sales of the said property and held by any of the parties shall be held in trust for the parties hereto."

Silas Butler, one of the associates, had died; and in his will he had recognized his rights in the ferry and lands by recommending a sale.

The bill was filed for a partition and sale of the properties; and for an account. The complainant had made James B. Clarke and wife, Joseph Moser and the executrix and executor of the will of Silas Butler parties defendants. The bill charged that James B. Clarke had had the sole control and management of the funds and received the incomings and had bought lands with parts of such incomings.

Under the decree in the cause, one Valentine G. Hall and divers other persons had purchased part of the premises at a master's sale; some of whom refused to complete their purchase, on the grounds : 1. That the heirs of Silas Butler were interested in the property and ought to have been made parties to the bill; 2. That Phœbe Butler, the widow of Silas Butler, had a right of dower; and, 3. That Eleanor Clarke, the wife of James B. Clarke, had an inchoate right of dower.

Mr. *Anthon,* for the complainant.

Mr. *Sackett* and Mr. *Bidwell,* for the purchasers.

*March* 9, 1841.

THE VICE-CHANCELLOR :—When a sale is made by a master in chancery under a decree or order of this court and the purchaser is not informed at the time of sale that he is to take the risk of any defect in the title, the court will not compel him to complete his purchase, unless it can assure him that he will have not only a legal title, such as will avail him in a court of law to defend the possession if necessary, but also a title that will not be liable to be set aside or even seriously litigated in

a court of equity. The rule appears to be, not to compel the acceptance of a title against which doubts or suspicions exist of such a character as that the court cannot conscientiously warrant the estate to him : 1 Sugden's Vend. 339 ; *Morris* v. *Mowatt*, 2 Paige's C. R. 590 ; *Jackson* v. *Edwards*, 22 Wend. 509, 510.

Will the purchasers in the present case obtain such a title under the decree and by master's deeds as the court can warrant to them ?

The decree is only effectual to pass the title or interest of those who are parties to the suit ; and, as the heirs or children of Silas Butler, deceased, were not made parties, one objection is, that the master's deed will not confer an absolute title against these heirs, but a title liable to be impeached or disturbed in equity, if not at law. Whether this be so and whether they were necessary parties to the suit depends upon the nature of the interest, if any, which they have acquired or hold in the property. That no legal estate or title to the lands in question ever vested in the heirs or children of Mr. Butler is very certain. It could not vest either by descent or devise : because their father had not, in his lifetime or at the time of his death, any such legal title or estate even in himself to transmit to his children. The title was in James B. Clarke solely ; and he held it for the purposes specified in the articles of agreement or association of the seventeenth day of August, one thousand eight hundred and twenty-six. Now, whether the transaction, as shown by this agreement, is or is not to be regarded in the light of a mercantile partnership between the parties, supposing them to have put in joint capital, which had been invested in the purchase of real estate for partnership purposes convertible into personalty and distributable as such when the partnership should be closed and dissolved, the lands thus bought losing, at least in the view of a court of equity, all the attributes of real estate in respect to its descendible or inheritable quality, seems to me not necessarily involved in the consideration of the objection that these children have not been made parties to the suit. For I think this objection can be disposed of more satisfactorily upon the force and effect of the articles of agreement, as constituting a trust estate in all the lands embraced by and made subject to the agreement. The

1840.

COSTER
*v.*
CLARKE.

1840.

COSTER
v.
CLARKE.

instrument is executed under the hands and seals of the then five parties in interest, namely, Coster, Clarke, Butler, James and Moser ; and it has the effect of a deed of trust, containing such trusts as it was competent and lawful for the parties, at that time, to create. Every court of justice, therefore, is bound to give effect to it as a deed and to allow the clearly expressed intention of the parties to govern in the destination which they themselves have given to the property according to the character with which it is clothed and the quality or stamp impressed upon it. Mr. Clarke is, thereby, constituted a trustee, and the sole trustee of all the lands the title to which was taken or placed in his name : " to hold in trust and dispose of the same for the joint interest of the parties." The trusts more particularly declared are that the " property shall be sold and disposed of for their joint and equal benefit from time to time as should be thought best for the space of five years." After which time, " all the real property shall be sold and the profits divided equally between the parties." The advances of original purchase money were, first, to be paid with interest ; then, debts ; and then the dividends or profits were to be distributed among the beneficiaries of the trust. Thus, it clearly appears that the parties interested or the beneficiaries of this trust are not to take land ; and do not, indeed, hold an interest therein as land ; but they are to take the proceeds of land upon a sale and conversion into money. And those too who advanced money to make the original purchases receive, not the land, but their money back again with interest and the surplus, after paying those advances and the debts, is to be divided, not in the way of a partition of land but as a division of money or profits arising from the sales. The moment that agreement was entered into, the subject of it, though land, received the impress of money and is ever afterwards to be considered as money, unless the parties had subsequently mutually agreed to treat and regard it as land. The conversion required by the articles of agreement or trust deed was an absolute and not a partial or limited conversion for the mere purpose of paying the advances spoken of or the debts, but for the purpose of dividing all beyond advances and debts as surplus or profits. This was the object and end which the parties had in view and expressly provided for. It is not a case, therefore, in which af-

1840.

COSTER
v.
CLARKE.

ter the object of a conversion is attained, some portion of the land may possibly remain unconverted or not required for the purpose and which the law will still allow to be an interest in the land descendible to the heir: Leigh and Dalzell, 2, 89; but it is a case where owners, acting for themselves and not in *autre droit*, enter into an agreement, by deed, for the entire and absolute conversion of their lands, not for a particular but for a general purpose ; and where, so far as Silas Butler was concerned, his interest in the property vested under the same deed requiring such a conversion.   In such cases, the principle is clear that the land loses its descendible quality as such and though not actually converted in his lifetime, his interest passed, not to his children as heirs, but to the personal representatives of his estate : Leigh and Dalzell, 91, 128.   That this is the correct conclusion cannot, I think, admit of a doubt ; and there is nothing in the other parts of the agreement nor in the will of Mr. Butler, read upon the argument, to show that a different result was intended.   In speaking of this particular property in his will, he merely recommends a sale of it, knowing, as it must be presumed, that he could not effect a sale himself or give power to his executors to sell and only meaning to express his strong desire that a sale should be made in pursuance of the trust, but not intending, thereby, to change, even if he could have done so, the direction which his previous act, in executing the articles of agreement, had given to the property.

Considerable stress has been laid upon some passages in the complainant's bill, as showing that the heirs and not the executors of Mr. Butler are the parties entitled to represent his interest in this real estate.   The bill does, indeed, speak of the heirs of Silas Butler, deceased, as the persons jointly interested with the complainant and the defendant, Clarke, under the agreement, Clarke having bought out the interests of James and Moser. I am of opinion, however, that this circumstance cannot have the effect of changing the law of the case and of conferring upon the children or heirs any rights they do not otherwise possess. These expressions in the bill may have been intended as mere *descriptio personæ*, but inaptly used, to show—not that they were the persons having the interest in their capacity of heirs at law, for, if so, why did the pleader omit to make them par-

ties, but, in common parlance, that the Butler heirs or the But-
ler estate still had a joint interest which could nevertheless be
represented properly by the executors.

If then, as I think is very manifest, the interest of Silas
Butler became personalty and passed to the personal repre-
sentatives of his estate and not to the children, in the capacity
of heirs at law or as devisees of his real estate under the will,
it seems to follow conclusively that, for the purposes of a sale
and of conferring valid titles on purchasers, it was not neces-
sary to bring those children before the court and make them
parties to the decree.

The objects of the suit were a sale of all the remaining pro-
perty and an accounting and settlement of the whole concern.
But without a suit or decree of this court, it was competent
for Mr. Clarke to make sales and execute conveyances to pur-
chasers either in the lifetime of Mr. Butler or after his death
and without asking Mr. Butler or his representatives to join in
the conveyances; and the same thing in effect may be done
by virtue of a decree and master's deed without the presence
of his heirs or representatives. On an accounting and final
settlement it is necessary that proper parties should be pre-
sent to represent the Butler estate; those parties are the execu-
tors, who are already before the court. None other, in my
opinion, are essentially necessary. Calvert, in his late Trea-
tise on Parties to Suits in Equity, p. 148, observes : " gene-
rally speaking the effect of that absolute authority which the
personal representative exercises over the assets of the de-
ceased is to render it unnecessary for a claimant against them
to make either legatees or creditors parties to the suit. The
court makes a complete decree considering the estate of the
deceased as protected by the personal representative." This
is doubtless correct.

On the subject of Mr. Clarke's power to convey and give a
good title without uniting the Butler heirs with him, even if
the interest had devolved upon them and that the same thing
in effect may be done by the decree of this court operating
upon Clarke in the absence of those heirs : I need but refer to
the case of *Wakeman* v. *The Duchess of Rutland*, before Lord
Loughborough in the 3 Vesey, 233, 503 and afterwards af-
firmed in the house of lords, 8 Bro. P. C. 145, Tomlin's edit.

There, a bill was filed by trustees of real estate for a specific performance of a contract which they had made to the defendants ; and, among other objections raised against the completion of the purchase, the defendants insisted that the persons interested under the trust and who were entitled to the purchase money were necessary parties to the suit and ought to join in the conveyance. Lord Loughborough held otherwise and that neither was necessary ; and he stated it to be the constant practice (saying there were five hundred such decrees,) to sell the estate in the first instance (that is, before the shares and interests of those beneficially entitled were ascertained,) of course, and he adds "the title can be made only by the trustees for the sale, without calling in all those parties who are beneficially interested." That case shows clearly enough the principle on which the court proceeds ; and it is a strong authority upon the point that the purchaser may have a good title under a trust for a sale without the beneficiaries of the trust being parties to the suit or joining in the conveyance.

Another objection in behalf of the purchasers is that the widow of Silas Butler not having been a party to the suit, except in her character of executrix, is not bound by the decree in any other capacity ; and that, as widow, she is not barred of any claim she may have for dower or interest in the nature of dower in the property or its proceeds.

That she is not entitled to dower in the lands as legal estate is very clear, for the reason that her husband had not, at any time, any legal seisin of the lands ; the title never stood in his name ; and if she has any equitable claim in lieu of dower or, as it is called, equitable dower, it is not such a claim as can disturb or interfere in the least degree with the title or possession of the lands in the hands of fair and honest purchasers. If such a claim exists at all it is against the proceeds which may be coming to her husband's estate and must be settled between her and the next of kin or devisees under his will and with reference to the terms of the will and the provision which is there made for her and no one but themselves have any concern with that matter.

What I have hitherto said.has been with reference only to the property bought at or previous to the time of entering into the articles of agreement of the seventeenth of Au-

gust, one thousand eight hundred and twenty-six and there-
in particularly mentioned. Subsequently to that time it ap-
pears that Mr. Clarke made purchases of other parcels of
land, either with his own funds or with the funds or property
in his hands belonging to the concern and took the titles in his
own name, but for the joint account of himself and the parties
in interest under the original agreement; and this property he
has held upon the same trusts as that previously purchased
though there has been no declaration to that effect in writing
or by deed, but, in the bill in the cause and in the answers
it has been regarded as a part of the same trust estate and has
been dealt with accordingly by the decree. The question has
been presented, whether the rights or interests of the Butler
family in relation to these after purchased portions of the pro-
perty are the same or different from those I have been con-
sidering. I do not perceive that they are in any respect dif-
ferent. It is difficult to imagine any possible ground on which
the widow and children of Butler can claim any greater or
more substantial rights in respect to this subsequently acquired
than to the previously purchased property. If they have any
rights at all, it must be under the trusts which Mr. Clarke vol-
untarily acknowledges, but he being willing to subject it to the
trusts of the agreement, they must take it as they find it there
converted into personalty like the other and governed by the
same rules. I am, therefore, of opinion that the purchasers
of any of these parcels will have equally as valid a title against
Mrs. Butler and her children as though such parcels had been
bought previously to and were included in the agreement or trust
deed.

I come now to the examination of another objection raised
by the purchasers, on account of the inchoate right of dower
which it is supposed the wife of Mr. James B. Clarke has or
may have in the property and which she does not propose to
release at present. This is a matter of great importance, as
tending to defeat entirely the sales made by the master under
the directions of the decree. Our revised statutes declare that
" a widow shall be endowed of the third part of all the lands
whereof her husband was seised of an estate of inheritance
at any time during the marriage." This was nothing more
than she was entitled to at common law and by previous sta-

1840.

COSTER
v.
CLARKE.

tutes of the state. It is simply declaratory ; and by a subsequent section of the same statute, it is provided that " no act, deed or conveyance executed or performed by the husband, without the assent of his wife, evidenced by her acknowledgment thereof in the manner required by law to pass the estate of married women and no judgment or decree confessed by or recovered against him and no laches, default, covin or crime of the husband shall prejudice the right of his wife to her dower or jointure or preclude her from the recovery thereof, if otherwise entitled thereto :" 1 R. S. 740, § 1, 742, § 16. If, then, these are lands of which Mr. Clarke is or was seised of an estate of inheritance to which her right to dower attaches in any degree and which is capable of ripening into an absolute right at law, so as to give her an estate in dower in the event of her surviving her husband, then I apprehend that nothing short of her own voluntary act, by way of release, will divest her of it ; and that the decree in this cause, whether regularly or irregularly obtained as to her, has not the power to extinguish it.

But while the law is thus careful to declare and protect the right of a wife to dower in lands of which her husband, at any time during the coverture, was seised of an estate of inheritance, it has long been an acknowledged and settled principle that the seisin must be a legal seisin as distinguished from a mere equitable right to or interest in lands : 1 Roper's Hus. and Wife, 351, 352 ; and it must be of such an estate or interest in land as will descend to the heir accompanied with the beneficial ownership. And hence it is that dower does not attach to lands of which the husband is seised as trustee in behalf of others any further than he has a beneficial interest therein or to lands in which he has an equitable interest merely as *cestui que trust* or *use* or if the right does attach in contemplation of law, wherever there is a legal title and seisin in the husband though it be for the benefit of others, still it attaches *sub modo* and subject to the equities which may exist against it and by which this court will undertake to control and regulate the right and if necessary restrain the wife from asserting it : 4 Kent's Com. 42, 43. In another place, Ch. Kent observes that, as a general principle, the wife's dower is liable to be defeated by every subsisting claim or encumbrance in law or equity existing before the inception of the title and which

would have defeated the husband's seisin. An agreement by the husband to convey before dower attaches will, if enforced in equity, extinguish the claim to dower and, as in equity, lands agreed to be turned into money or money into lands are considered as that species of property into which they were agreed to be converted, the right of dower is regulated in equity by the nature of the property in the equity view of it: 4 Kent, 50. These equitable considerations arise in the present case and apply with great force. The lands were bought, in the first instance, with moneys, to a large amount, advanced by Mr. Coster and some by Mr. Butler, under an agreement which was embodied in the written instrument before mentioned of the seventeenth of August, one thousand eight hundred and twenty-six. This agreement preceded or was simultaneous in effect with the purchases and the vesting of the title in James B. Clarke. The purchases were based upon it or were made with reference to its provisions ; and from the very inception of Mr. Clarke's title and legal seisin the trust attached ; and from that moment the property became converted into personalty, leaving nothing for the wife's right of dower to attach to except in subordination to the trusts. And after all the purposes of a sale and conversion are fully answered, then, if she had survived her husband, she might perhaps have claimed equitable dower out of his share of the dividends or surplus similar to what was allowed the widow in the case of *Smith* v. *Jackson*, in 2 Edwards' Ch. R. 28. But, such a right in equity ought not and cannot have the effect of intercepting or incumbering a sale to the prejudice of other parties in interest who have a right to a sale free from dower and all claim of that sort in the lands so that the best posssible price may be obtained and the purchaser of course receive an absolute title, leaving the wife, if she happens to become a widow, to claim her equitable allowance out of the clear surplus that may belong to her husband after the demands of others are satisfied. This seems to be the necessary result from the very nature of the transaction and the character which the parties have given to it themselves ; and unless this court can hold the lands exonerated from all claims of dower of Mrs. Clarke, it is obvious that the interest of the other joint owners may be very much impaired and sales such as were contemplated by the

agreement entirely frustrated. To prevent such manifest injustice to the parties in interest as might follow her refusal to execute valid releases of her right to dower, a court of equity will be bound, at all times, to interpose and protect purchasers against her claims, should she survive her husband and attempt to enforce them. This is the case and the conclusion I have formed, not only as respects the lands particularly mentioned in the articles of agreement or trust deed, but also as respects the parcels of land subsequently bought with the joint funds of the concern or with money advanced to Mr. Clarke by any of the other parties in interest for the purpose of making such purchases or which were obtained by exchanging some other, parcels of the trust property for the parcels thus subsequently acquired—all such pieces of property stand upon the same footing. Purchased in that way they became legitimately trust property for the purposes specified in the agreement; and are governed by the same equitable principles in respect to dower.

There is, however, one piece of property, if not more, which, I think, must be regarded differently in relation to Mrs. Clarke's inchoate right to dower. I allude to some property which Mr. Clarke, in his answer, says he purchased of the corporation of Brooklyn with his own proper money and which I do not understand he was under any obligation to bring into the joint concern, though he may have made the purchase on that account. Having made the purchase with his own money and taken the title in his own name, he acquired such a seisin and estate in that particular land as would give his wife a legal right to dower ; and inasmuch as, under these circumstances, there could be no implied or resulting trust in favor of the other parties which they could enforce without his consent, no equity existed on their part to displace that legal right of the wife and his consent to subject this property to the trust and to consider it a part of the trust estate and to have it sold as such can no more deprive her of dower in it than in any other real property of which he is absolute owner by making a sale and conveyance without her assent and concurrence. So far as any of this latter description of property may be included in the sales made by the master, I am of opinion the purchasers are not bound to take the title, unless accompanied by a proper release from Mrs. Clarke ; and in order to ascertain the fact

whether any of the purchasers have bought of the property thus particularized by Mr. Clarke in his answer, there must be a reference to a master.

In relation to all the other property, I am of opinion that Mrs. Clarke can have no right to dower which can affect the title or the property itself in the hands of the purchasers and against which this court, upon well settled principles, cannot protect them. I would observe in conclusion, on this branch of the case, that I place no reliance upon the present decree as furnishing that protection. I believe it was entirely unnecessary to make Mrs. Clarke a party to this suit ; and it is immaterial whether the proceedings have been regular or not in taking the bill as confessed against her and whether the decree purports or not to bind her so long as she is feme covert. This court will not undertake to decree and probably has not the power to decree a surrender or release of any legal rights she may have when she becomes discovert ; or, in anticipation of her surviving her husband, lay her under any injunction or restraint at this time against asserting what she may then suppose to be her legal rights ; but when the time arrives for her to make such claims and should she then undertake to assert them, I have no doubt whatever of the power of a court of equity to control and perpetually enjoin her and protect effectually the purchasers as I have above shown. Believing, from these views of the whole case, upon the several objections raised by purchasers, that this court can nevertheless assure and secure to them clear and valid titles to the property, I must require the purchasers to complete their purchases, except of those parcels which Mr. James B. Clarke bought and paid for with his own money ; in relation to which a right to dower may exist.