Jones *v.* McKenna.

SAMUEL H. JONES et al. *v.* ROBERT McKENNA.

1. CHANCERY PLEADING AND PRACTICE. *As to necessary parties.* *Quere,* whether a mother who buys land, and causes the deed to be made to her in trust for the separate use of herself and children for life, and after her death to go to her children or the issue of such as may be dead, with the power of sale and re-investment reserved to her, sufficiently represents the children to make a sale of the land good against them under a bill filed for the enforcement of the lien reserved on the face of the deed for the payment of the purchase money?

2. SAME. *Remaindermen. Equitable subrogation.* If such a sale be declared void as to the remaindermen, because not made parties, the Court intending to sell and the purchaser to buy the entire estate, so much of the purchase money as was applied to the payment of the lien debts, with interest, as provided in the original contract, will be, as against the remaindermen, although infants, by way of equitable subrogation, charged in favor of the purchaser as a lien on the land, and the land subjected to the satisfaction thereof by sale.

3. SAME. *Revivor.* A suit may be revived under the Code, sec. 2855, by the infant heirs and successors of a deceased complainant, upon motion in their name by next friend.

4. SAME. *Decree. How set aside or impeached.* A decree by consent on behalf of infants cannot be set aside at a subsequent term upon motion or petition by them, nor can it be brought up by appeal. It can only be impeached by an original bill.

FROM SHELBY.

Appeal from the Chancery Court at Memphis. R. J. MORGAN, Ch.

SMITH & COLLIER, HARRIS & TURLEY, GANTT & PATTERSON for Jones:

METCALF & WALKER for McKenna.

COOPER, J., delivered the opinion of the Court.

On the 31st of July, 1865, Thomas Jones sold and conveyed to Sarah J. Jones, then the wife of Samuel H. Jones, the land in controversy in this case, reciting the consideration and the notes given therefor, five of which, for various amounts, aggregating over $5,000, were made payable to third persons named, and expressly retaining a lien on the land for the payment of the purchase money.

The deed conveyed the land to "Mrs. Sarah J. Jones upon the trusts and limitations hereinafter mentioned, * * * to have and to hold the same to the said Sarah J. Jones for life, for the separate use and benefit of herself and children, and at her death to go to her children, or the issue of such child or children as may then be dead." The deed concludes : "Should it become necessary to make sale of said land in the opinion of Mrs. Jones for any reason satisfactory to herself, she is expressly empowered to sell the same and make title to the purchaser, but the proceeds are to be invested by her in other lands upon the trusts expressed in the deed.

On the 13th of August, 1867, J. C. P. Hammond, as the personal representative of one of the third persons to whom a purchase note was made payable, and the personal representatives of another of these persons, filed their bill against Samuel H.

Jones and Sarah J. Jones, to subject the land to the satisfaction of the purchase money represented by said notes under the lien retained.

To this bill the holder of another of the notes was permitted to become a party complainant, and such proceedings were had that the amount due upon these demands severally was declared, and the land was ordered to be sold in satisfaction thereof.

At the sale made under this decree, Robert Mc-Kenna became the purchaser at $7,200, and the money was paid into court, and paid out under its orders. There seems to have been a small surplus of about $172, after paying such debts as were decreed to be liens on the land, and this surplus was paid to McKenna upon a debt of Sarah J. Jones to him, which, by consent of her counsel, seems to have been declared also to be a lien, although not one of the notes mentioned in the deed. The lien debt proper seems to have been a little over $5,000.

Previous to the sale under the decree, an agreement was entered into by McKenna, afterwards reduced to writing and signed by him, by which, after reciting the sale and that the purchase was made for the payment of the lien debts proper, and also of a debt to a third person named, contracted upon the faith of Mrs. Jones' separate estate, and another debt due from her to him for about $1,300, "it was agreed by and between said Sarah J. Jones and said McKenna, that the said

Sarah J. Jones should have the right to redeem said land at any time within ten years, by paying the amount of said debts, including the amount due said McKenna, and by paying annually on the whole sum the interest at the rate of ten per cent. per annum, to begin from the 1st day of June, 1870, and the payment of which interest, as it matures at the end of each year, is to be paid promptly and without fail, and a failure to do so, at the end of any year, will at once cut off and bar the right of redemption, and make the title absolute in the said McKenna."

The interest not having been promptly paid under this agreement, McKenna obtained a writ of assistance to put him in possession of the land, and, on the 1st of March, 1873, Samuel H. Jones and Sarah J., his wife, filed their bill, enjoining the execution of said writ, setting out the agreement with McKenna, who is made a defendant, claiming that the purchase in accordance therewith created a mortgage, and asking that it be so decreed, and also decreed that complainant, Sarah J., has the right to redeem.

Pending this suit, on the 26th of December, 1873, Sarah J. Jones died. On the 30th of April, 1874, her death was suggested and admitted, and the suit revived, on motion, in the names of her children and heirs by Samuel H. Jones, their father and next friend, they being infants.

The cause was heard on the 24th of June, 1874, when the Chancellor decreed that the agree-

ment did not constitute a mortgage, but only gave "a conditional right of redemption or re-purchase" upon the prompt payment of interest, and it appearing to the Court, by "admissions of all parties," that the annual payments had not been made, the Court adjudged the title to the land to be absolute in McKenna. "But," recites the decree, "inasmuch as said McKenna is willing, and does in open court consent, for the advantage and benefit of complainants, that said agreement may, for the purposes of this suit, be construed otherwise, upon condition that said land be now ordered to be sold without redemption for the payment of the amount due to him in said cause, with ten per cent. interest thereon; and all parties consenting thereto, the Court doth so order and decree." The Court then, from the papers in the former cause, "and the admission and consent of parties to the correctness thereof," ascertained the amount due McKenna to be $10,531.51, and ordered the land to be sold in satisfaction thereof, unless paid within a given time. "By consent of parties" the sale was made free from the equity of redemption. To this decree the complainants, by their solicitors, give their consent in writing.

Under this decree the land was sold, and McKenna became the purchaser at $8,000. On the 20th of November, 1874, the sale was confirmed, the title vested in McKenna and a writ of possession ordered to put him in possession of the land.

On the 4th of December, 1874, the children of Sarah J. Jones, four of whom, being infants, appear by an adult sister as their next friend, and moved the Court to vacate the decree of the 20th of November, 1874, of the same term, which motion was continued for argument.

On the 12th of February, 1875, the motion was taken up and heard, and the Court vacated and annulled the decree of the 20th of November, 1874.

The decree then rendered proceeds: "And the Court being of the opinion that upon the death of Mrs. Sarah J. Jones, the subject matter involved in this cause ceased to exist, and that the cause ought then to have abated, and in law did abate, it is ordered that this cause do abate."

A bill of exceptions shows that on the hearing of this motion the affidavit of George C. Holmes was read by the children of Sarah J. Jones. No affidavit appears in the record, and the Clerk states that it was lost before enrollment. From this decree McKenna appealed.

On the 4th of August, 1875, Robert McKenna filed his bill against Samuel H. Jones, stating the foregoing facts, claiming the absolute title to the land by virtue of the proceedings in said causes, and asking that the bill be taken as a bill to quiet his title, and to remove the claim of the defendants as a cloud thereon. But if mistaken in his rights in this regard, that he be subrogated to the rights of the lien creditors whose debts

were paid by the purchase money received from him under the first sale, and the land subjected to the satisfaction thereof by a sale on time free from the right of redemption.

Such proceedings were had in this cause that a final decree was rendered in favor of the complainant, the Court being of opinion that he acquired a good title to the land under his original purchase.

From this decree the defendants appealed.

The two cases of *Jones* v. *McKenna* and *McKenna* v. *Jones* are now before us separately, but have been heard and argued together. The stress of the argument submitted has been directed to the discussion of the validity of the title acquired under the sale in the Hammond case, the question turning upon the point whether Sarah J. Jones, as trustee and mother, so represented the interest of her children in the land as to make the decree binding on the children, who were no parties to the suit. The point is one of some nicety. For, while the general rule undoubtedly is, that in foreclosure suits the beneficiaries, as well as the trustees should be made parties, ( *Osbourn* v. *Fallows*, 1 R. & M., 741; *Calverley* v. *Phelp*, 6 Mad., 229; *Clark* v. *Reyburn*, 8 Wall, 318), yet it has equally been the rule that a trustee may be invested with such powers as to make him the representative of the beneficiaries in all things relating to the trust property: *Bifield* v. *Taylor*, 1 Beat., 91; *Kerrison* v. *Stewart*, 93 U. S., 160; *Sweet* v. *Parker*, 7 C. E. Green, 453. And it is difficult to conceive of

a stronger case of the right of representation than where the trustee is the purchaser of the property, the principal beneficiary and the mother of the other beneficiaries, who are mere objects of her bounty, the legal title and power of sale being vested in her, and the debt for which the land is sought to be subjected being for the purchase money of the land itself.

Upon a critical examination of the record we find it impossible to decide the point in one of the cases, and unnecessary in the other. The bill of Jones and wife *v.* McKenna was filed to enjoin the execution of a writ of possession under the sale in the first case, and for relief upon the ground that at the sale there was an agreement, subsequently reduced to writing, by which McKenna agreed to purchase and hold the property in mortgage, subject to redemption upon long time. McKenna admitted the agreement, but insisted that it was only a concession of the right to repurchase on certain terms. The mother died, and the suit was revived in the name of the children, and proceeded to a decree. In that decree, although the Court construed the contract as contended for by the defendant, yet the defendant waived the decision in his favor and agreed that the agreement might be treated as a mortgage, for the purposes of that suit, upon condition of an immediate sale, aud, thereupon, by consent of parties, a final decree was rendered ascertaining McKenna's debt, and ordering a sale. The sale was made

and reported to a subsequent term of the Court, and confirmed. At the same term a motion was made by the children of Sarah J. Jones to vacate the decree confirming the sale, which motion was afterwards sustained, and McKenna appealed.

The record discloses no ground for this action of the learned Chancellor.

The sale seems to have been in strict conformity with the decree under which it was made and the confirmation proper.

As long as the decree of the former term remained in full force, it was the duty of the Court to execute it. Having been rendered at a previous term the Chancellor had no power over it. His Honor seems to have thought that because the agreement, on which the suit was based, was, in his opinion, a contract for a strict right to repurchase not complied with, the suit necessarily abated. But in this he was clearly mistaken.

The children had the right to revive the suit to test that question precisely as they would have had the right to have exhibited a bill upon the agreement itself, if their mother had died before commencing a suit upon it. And if the Chancellor made a decree adverse to their rights, they had the option to appeal to this Court, and we might have differed with him in the construction of the contract, or, as was done, compromise the litigation by entering into a consent decree: *Wall* v. *Bushby*, 1 Bro. C. C. 484.

That decree having been sanctioned by the

Court, by passing it, could not be set aside upon motion or petition: *Harrison* v. *Rumsey*, 2 Ves. 488; *Coster* v. *Clarke*, 3 Edw. Ch. 428; *Decarters* v. *LaForge*, 1 Paige, 574. Nor is the decree before us now, for no appeal lies from a decree by consent: *Williams* v. *Neil*, 4 Heis., 2 79; *Toder* v. *Sansam*, 7 Bro. P. C. 244. The only remedy, if the party did not really consent, is by an original bill in the nature of a bill of review: *Jones* v. *Williamson*, 5 Cold., 371; *Bradish* v. *Gee*, Amb., 229; *Richmond* v. *Tayleur*, 1 P. W., 734.

Under the Code, Sec. 2855, a suit may be revived in the name of infants by their next friend, by motion, in the same way as it might be revived by bill of revivor by next friend. If any of them were of age, the fact does not appear in the record of that case, nor, if it did, would the form of the entry of revivor affect its validity if the adult children did in fact appear and consent to the final decree. As the record comes before us, the Chancellor erred in setting aside the decree of confirmation, and his order in that regard must be reversed and the decree of confirmation affirmed with costs.

In this view, if McKenna elects to take the decree suggested, the final decree in the case of McKenna *v.* Jones, which is based on the validity of the sale in the Hammond case, must be reversed, and a decree rendered here in his favor based upon the consent decree in the case of Jones *v.* McKenna. For McKenna has, in his bill, set out

the facts touching both of the previous suits, and embodied the records of those cases in the record of this case. He admits in this bill that he did enter into the written agreement which forms the basis of the bill of Jones and wife, and can claim only such rights as he acquired in the latter suit. The modification of the decree may throw the costs of this Court upon him.

In the order of revivor as it appears in the record of the case of Jones *v.* McKenna, the name of one of the children does not appear. It may be, too, that some of the children were then of age, and did not authorize the revivor. No authority was necessary from the infants; any person, and certainly their father, acting in good faith, might revive for them. But what ground might be shown by the original bill for setting·aside the consent decree we cannot know, and the decrees above suggested would not affect the right of the children to file such a bill, if there be any ground for relief in that form. It is clearly not to the interest of McKenna to begin another ten years round of litigation, if there is a plausible opening for it. For these reasons, if he, or those who now represent him, will waive the benefit of the decrees suggested, and take a decree, under the last bill, for the amount of money paid by him at the first sale, which went in extinguishment of the lien debts, with interest thereon at the rate fixed by contract, he may do so, and sell the land at once, on time free from the right to redeem, in

satisfaction thereof, so as to have the sale confirmed at the present term. In that event, the entire costs of both causes may be paid out of the proceeds of sale.

It is the settled law of this State, that where the property of infants has been sold under judicial proceedings which are afterwards declared void because they were not parties, whether the sale was made to pay debts of the ancestor or directly for the benefit of the infants, the infants will be required to refund to the purchaser at the judicial sale so much of the purchase money as was received by them or appropriated in the payment of debts which were a lien on the property: *Elliott* v. *Cochran,* 2 Sneed, 468; *Arrington* v̄ *Grissom,* 1 Cold., 525; *Martin* v. *Turner,* 2 Heis., 389, *Campbell* v. *Bryant,* 1 Leg. Rep., 137.

These decisions rest upon a principle of equity so obvious as to commend them to our sense of justice, outside of their binding authority as precedents. They fully sustain the relief we have suggested subject to the election of the party. The Court in the original case, intended to sell, and the purchaser supposed he was buying the entire estate in the land. If he failed to do so, it was because the infant children of the holder of the legal title were not parties. The case falls precisely within the authorities.